The next case this morning is 5220830, People v. Williams. Arguing for the appellant is Meredith Barron. Arguing for the appellee is Victoria Joseph. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the Clerk of the Court is permitted to record these proceedings today. Good morning. Good morning. Good morning, Your Honors. Ms. Barron, are you ready to proceed? I am, thank you. All right. Good morning. May it please the Court. My name is Meredith Barron from the Office of the State Appellate Defender. Here today on behalf of my client, Kenneth Williams. Now, if it's all right with the panel this morning, I'd like to focus on Part B of our first issue. That the trial court erred when it denied Mr. Williams' requests to simply inform the jury that he was found not guilty of the state's other crimes evidence. But, of course, I'd be happy to answer any questions you might have on our other arguments. Your Honors, Mr. Williams was originally tried before a jury on two separate counts of armed habitual criminal. One, concerning a shooting that took place on April 13, 2016. And the other, concerning the constructive possession of a firearm on May 4, 2016. And while he was convicted of that May offense, it is indisputable that he was found not guilty of the April offense. And it is likewise indisputable that when his conviction was ultimately reversed and remanded for a new trial, the one at issue in this case, the prohibition against double jeopardy prevented the state from retrying that acquitted offense. Nevertheless, at Mr. Williams' new trial, the court allowed the state to introduce other crimes evidence of that April shooting. And while Mr. Williams repeatedly requested that he simply be allowed to tell his jury that he was found not guilty of that offense, he was denied at every turn. Denied, even though the state was allowed to introduce significant evidence of that shooting from multiple witnesses. Denied... I'll stop you there, Counsel. Did the defendant testify on his own behalf in that case? He did. All right. Could he not have testified himself that he was acquitted? Well, that is exactly what we're saying he should have been allowed to do. But whenever he asked if he was allowed to even mention the acquittal, he was told he was not. And so he would not have been allowed. Where he was told that he could not even mention the acquittal? Well, every single time that he asked if he could present the acquittal evidence, he was told no. And in fact, when he was when actually in the beginning of this case, when he was not representing himself, he had an attorney during the motion to admit prior bad acts. His attorney requested that they be allowed, if they were in fact allowed to introduce the April shooting, be allowed to then also introduce evidence that he was acquitted. And at that time, the court said no. All right. But during his case, during the trial itself, he could have had an opportunity, correct, to cross-examine about the acquittal or to testify himself. Is that correct? He was not barred from that, correct? I believe he was. I believe that the ruling of the court made it, especially as a pro se, as a pro se defendant. But the way I also read the court's rulings was that he was not allowed to even mention that there was an acquittal. Because the court repeatedly ruled when talking about this that it would muddy the case. It would confuse the jury. So they kept saying that they were not allowed to have that information out there. Do you have a site to the record where that is? That he was barred from any testimony about the acquittal? Well, during the time that he was talking about the jury instruction conference, at that point, they were discussing whether or not he was allowed to introduce the acquittal evidence. And they had a recess where they discussed whether or not he could mention it. And there was during that time that I believe the case of Baldwin, the state went back to the case of people be Baldwin and came back and said, you know, this is the way we're doing it. This is not something that we should be allowed to discuss. And the court actually said, if I can have a moment to look at the. I agree with you on that. I recognize that. I know that during the conference that he was told that there couldn't be a jury instruction about acquittal. But I'm wondering if there was any time during the trial that he attempted to bring up the issue of the acquittal himself because he was representing himself. Correct. There was not an attorney. He was, but in the very beginning of the case, he did have an attorney and that attorney did try to say when there was the motion for prior bad acts that they would be allowed to introduce evidence of the acquittal. And the court said no. So, based on that ruling, it was my understanding and as I believe it was the defense attorney's understanding and then Mr Williams own understanding that he was not allowed to introduce evidence of his acquittal. Okay, thank you. Thank you. Now, your honors. The state claims that the cases we rely on, like ward Rosado and Bedoya do not apply because they are factually distinct. And it is not whether they are the same facts as faced by Mr Williams in this case. The question is whether the acquittal evidence would have been necessary to avoid prejudice and false inferences and provide his particular jury with the information it needed to place that other crimes evidence in a fully realistic context. What's our standard of review on this issue? I'm sorry, what was that? What is our standard of review on this issue, a piece of discretion. And we're arguing that the trial court did abuse its discretion because here, Williams jury was allowed to hear emotional testimony from crystal Matthews, who described him firing a gun multiple times towards her home, where she was resting with her family. And the state at lanes discussed her testimony in their closing argument, where they repeatedly extolled her credibility, going so far as to actually tell the jury that Matthews made a quote, very good identification, and to find that she misidentified Williams would quote, be a coincidence beyond the realm of credibility. That's why crystal is so valuable. But a prior jury who heard Matthews testimony much closer in time to the April incident clearly disagreed with the state's narrative, because they found Mr Williams, not guilty. And by excluding evidence of that acquittal, Mr Williams jury was not able to evaluate the other crimes evidence fully because it limited his ability to present her testimony in the proper context and artificially enhanced her credibility. To put it another way as Bedoya held by barring that evidence, the risk of misleading or over persuading the jury was palpable and that prejudice was not mitigated by the jury instructions. Now, despite the state's argument to the contrary, the use of the word offense in warden Rosado and Bedoya versus conduct here is merely a distinction without a difference. Because Mr Williams jury undeniably heard and considered evidence of a shooting. And it defies logic to think that a jury would not consider a shooting to be a criminal offense, simply because their instruction use the word conduct. Instead, here, those terms are effectively interchangeable and using the term conduct did not reduce the likelihood that his jury either thought that he was convicted of that April shooting, or that a charge was otherwise alive and pending. Now, the state concedes that this issue is preserved. And so it has the affirmative burden of proving that this error was harmless beyond a reasonable doubt, and they did not and cannot do that. Once again, the other crimes evidence was a prominent feature of the state's case, because not only was there significant ballistics testimony. But crystal Matthews set the tone for the entire trial painting Mr Williams as a violent offender who terrorized her family. And the state harped on her testimony in their closing argument, where they praised her credibility. And again, they actually said this time, if you hear 34 or more gunshots being fired outside your front yard. That is an incident that's going to be burned into your memory. So without the acquittal evidence, the jury only heard half the story. Let me ask you a question, if I may, during Matthews testimony in this hearing. Did she testify about the shooter, or about the weapon the shooter, and the previous incident was using. She said she did say there was a black and silver handgun, but then she continued to say a lot of other details about the actual shooting itself about it being too many gunshots to count about her having to throw her her son throwing his body over his girlfriend. She then actually looked at the jury and said, I don't know if you have children to the jurors. But when you think that your child's life is in danger, it's going to be an incident you always remember. I recall all that in your brief, and I appreciate that. What I'm suggesting, though, is in this trial, she wasn't called to identify the shooter, but the weapon that she saw at the at the first incident. Is that correct? She was introduced to identify the weapon, but in so doing, she identified and described Mr. Williams in prejudicial ways, concerning the fact that this was an offense that was about a possession and not the shooting and she painted him as a violent person who terrorized her family. And by doing that, did she specifically testify to his the shooter's characteristics? I mean, he was five foot tall, seven foot tall. I mean, how did she describe the shooter? Describe she described what he was wearing that day and identified him, but she did not describe his actual physical attributes. OK, so her testimony in this second trial was mainly the type of gun that was used, and she elaborated in terms of how many shots were fired and how terrified she and her family were. Yes, she did describe the gun, and then she went on to testify about the shooting in a way that it would have been had it been his trial for that shooting. Right, and the state's other witnesses then tied in the defendant here with that 1st shooting based on the ballistics and the gun and all that. Is that correct? Yes, there were 3 other witnesses then that they used to do ballistic testimony to tie it together. Okay, thank you. I want to switch gears just a bit. I know you mentioned that you weren't going to speak on the sentencing argument that you had, but I do have a question about that issue. The state more or less is conceding error with regards to the admonishment with the sentencing. Is that correct? That is my understanding. Yes. All right, but they're noting that the sentencing result would have been the same. How do you respond to that? I mean, do you believe that the sentencing result would have been the same? I don't. I don't know. I think that is for the trial court to decide. If you look at what the court said, it twice said, calling out specifically that because this is mandatory consecutive, these are going to be consecutive sentences. So, the fact that they actually felt the need to twice say that it was mandatory and that is why they are doing it seems to be the reason that that is why they impose mandatory consecutive. So, no, I don't believe that the result would be the same. Okay, thank you. Thank you. I see my time is up. Should I stop here? You're going to have time in rebuttal. So, yes, I know we've peppered you with some questions, but you'll have 5 minutes in rebuttal. Just as more or just as more justice. Well, do you have any additional questions? We lost you there. Do you have any questions? No questions. Okay, great. And just a shoulder. No questions. All right. Thank you. Miss Joseph, if you're ready, you may begin. Good morning, your honors. Victoria Joseph for the people of the state of Illinois. May it please the court and counsel. The people will also unless your honors have any other questions are going to jump to the acquittal evidence that seems to be the most prominent issue in this case. There is no authority that requires the trial court to admit acquittal evidence. Every time other crimes evidence that has been acquitted is also admitted. The court applied the same rule of evidence standard to the acquittal evidence that it did to the other crimes evidence, which is specifically looking at. Does the probative value substantially outweigh the danger of unfair prejudice jury confusion or delay. And in the post trial motion, the court specifically addressed that it was excluding it because of the confusion for the jury. This is a unique case distinct from the other cases that have been cited that have dealt with the other crimes evidence and during acquittal evidence. Issue in that all of this was tried together originally and the judge was going very far to make sure that the jury was not aware that this was a retrial. And if you're bringing in the context of the other crimes evidence by only saying he was acquitted of them, you're not bringing in the full context of that. This was part of a retrial where he was also found guilty of the. Currently charged offense. Let me stop you there. The questions that I asked of Miss Baron. So, are you agreeing with her assessment that that there was that he did the judge did not allow the acquittal information or was it simply that the defendant didn't introduce the information? Well, I think a lot of what the defendant kept arguing was for an instruction that the jury be instructed that he was acquitted and there is no basis for a jury instruction. He did not try to introduce the evidence in his testimony through the cross examination of any other witnesses. So, we don't know whether specifically it the court would have barred it. There would have likely been an objection that there would have been a ruling on, but we don't have that. Most of his questions were asking for a jury instruction, which the court correctly found. There is no jury instruction that would allow it even reference to the no reference to the record that you are aware of where he tried to testify about his acquittal or tried to cross examine the witness about his acquittal or ask for judicial notice to be taken or anything like that. I do not recall that in the record. Your honor. All right. Thank you. Also, evidence of the acquittal. It's a double it's a double edged sword in this case, because now you're becoming aware that you were previously charged for these acts. And the court really was trying to keep out that there was another trial. The officialness of having been charged with something implies there was sufficient evidence for the prosecution to pursue. This didn't open up the door to some legal disposition or procedural posture that there was some other pending case that there was some other prior testimony from Matthews. So, factually, it really is distinct from the other cases in that a lot of the concern about allowing the jury to speculate that there was some other pending case hanging over him was not present in this case. And the fact that the term conduct was used was the general term is permissible in the committee notes of the I.P.I. And it's it's giving the innocuous term so that the jury is not left to speculate as to the entirety of the other proceeding or that the other crimes evidence was a charge that was alive and pending. So that is why there is a distinction here. The judge did consider it as a factor was aware at the time he admitted the other crimes evidence. This was a consideration that went in to both the weighing of that evidence and it was proper. It was a proper consideration that allowing evidence of this other trial and a retrial and introducing all of these other proceedings would have led to jury confusion. And we're looking at here is, yes, there may be judges out there that have a differing opinion, but we're looking at was this judge's decision rational under the abuse of discretion standard. And again, the people maintain that they properly preserved that either the admission of the evidence itself or the exclusion, any exclusion of the acquittal evidence was harmless. There was substantial evidence here. The most damning evidence, as defense pointed out in their brief, is the DNA results. So there really was not a real possibility that the jury convicted the defendant based on the alleged prior bad acts alone. So we have the physical evidence here. We have the circumstantial evidence supporting that the DNA results collaborated. And in either case, we're not looking. He would have been convicted. Absent the other crimes evidence, he would have been convicted even if they told him he had been acquitted. There was the direct physical evidence that sufficiently and substantially linked the defendant to the offense. Counsel, can you quickly address? You heard my question to Miss Baron about the sentencing. I believe that the state has you tell me with relation to preserving the fact that it's a forfeited error. We understand. We understand the second prong. Yes, we understand the facts in the law. The people were setting out the fact that the sentence could be the same. We realize that in not being aware of the existence of this other statute, it's a little bit difficult for the court to be exercising discretion if they're not aware that they can exercise that discretion. So it's more or less an awareness of the judge in exercising discretion will still be considering all of these factors going forward on a remand. So the sentence may not be different from what it currently is. But it could be different. It could be. All right. All right. Thank you for that. Are there any other questions? Your honors. Not for me. Justice Welch, do you have any other questions? No question. The people ask that you affirm. Thank you. Oh, and understandably, the difference on the sentence. Sure. Thank you. Your honors. Thank you. Miss Baron, you may proceed with rebuttal. Your honors. Your honors, this was an abuse of discretion. Mr. Williams asked for one sentence where he was allowed to explain to his jury that he was not guilty of the April shooting. And as Ward explained, that could have been tempered by some things as such as simple as saying that doesn't mean actual innocence, explaining what not guilty means. That is all he wanted. And the state was allowed to introduce significant emotional testimony from Crystal Matthews about a shooting. And once again, despite the state's argument, hearing about a shooting implies an offense, regardless of the use of the word conduct. And regardless of the term used, it's undeniable that Mr. Williams jury was tasked with determining whether they believed he was actually involved in that shooting. And it would have been relevant evidence for them to hear, relevant under Rule 401, for them to hear that he had been found not guilty of that offense previously. Now, I know that counsel says that this is not the exact same facts as in Ward, Rosado, and Bedoya, and that's true. We don't deny that. And each case is its own. But in this case, based on the testimony and the introduction of the state's other crimes evidence, presenting the acquittal evidence would have actually prevented confusion. And it would have put the context properly of the state's other crimes evidence, particularly because here, if we're looking at the facts of this case, hearing the other crimes evidence, then when coupled with the party stipulation that Mr. Williams had been convicted of prior unidentified convictions, left the jury with a false impression that he had been previously convicted of that April shooting. And as the state acknowledged in its brief, the people's case was not perfect. Nobody saw Mr. Williams with a gun on May 4th, and he presented his own forensic expert to minimize the impact of the state's DNA evidence. And since the state was allowed to delve into the details of the April shooting, fairness required disclosure of Williams' acquittal. In closing, the trial court allowed evidence of the April shooting to permeate the state's case. Yet it would not allow Mr. Williams to mitigate that evidence by simply informing the jury that he was found not guilty of that offense. But that one sentence would have minimized juror confusion, prevented speculation, and allowed the jury, as fact finder, to have the information that it sorely needed to assess the other crimes evidence in a fully realistic context. Therefore, by depriving the jury of that acquittal evidence, the trial court abused its discretion. And since the state cannot prove that this error was harmless beyond a reasonable doubt, Mr. Williams maintains that this matter should be remanded for a new trial. And additionally, if this court does not grant relief under Issue 1, Williams respectfully requests that under Issue 2, he be granted a new sentencing hearing as the state concedes that the court failed to advise him of his right to elect. And Mr. Williams maintains that this deprivation of due process constitutes second-pronged plain error. Thank you.